UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STOUT RISIUS ROSS, LLC,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>ASPEN SPECIALTY INSURANCE COMPANY,<br><br>　　　　　　Defendant. | Case No. 21-cv-04412-ER |

**PLAINTIFF STOUT RISIUS ROSS LLC'S
LOCAL RULE 56.1 STATEMENT OF MATERIAL UNDISPUTED FACTS
IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Daniel J. Healy, Esq. (DH-7396)
**ANDERSON KILL L.L.P.**
1717 Pennsylvania Avenue, N.W., Suite 200
Washington, DC  20006
(202) 416-6500

John M. Leonard, Esq. (JL-2015)
**ANDERSON KILL P.C.**
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Stout Risius Ross, LLC ("Stout"), sets forth the following statement of material facts of record to which Stout contends there is no genuine issue to be tried in support of its Cross-Motion for Partial Summary Judgment. The exhibits referred to in this Statement are attached to the September 8, 2021, Declaration of Stephanie Clifford (the "Clifford Decl.") or the September 8, 2021, Declaration of Daniel J. Healy (the "Healy Decl.") and are referred to as "Ex.___."

**I.     The Terms of the Insurance Policies Relevant to Stout's Motion**

1. For the exact terms of the policy at issue herein, Stout incorporates by reference Aspen Miscellaneous Professional Liability Insurance Policy No. LR00DPQ19 (the "Policy"), filed contemporaneously with this Court. *See* Clifford Decl., Ex. 1.

2. The Named Insured under the Policy is Stout. *See* Clifford Decl., Ex. 1 at Declarations, Item 1.

3. The Policy's Inception Date is September 1, 2019. *See* Clifford Decl., Ex. 1 at Declarations, Item 3.

4. The Policy's Expiration Date was initially September 1, 2020. *See* Clifford Decl., Ex. 1 at Declarations, Item 3.

5. The Policy's Expiration Date was later extended to September 30, 2020. *See* Clifford Decl. at ¶ 9.

6. The Policy contains a five million dollar ($5,000,000.00) per claim limit of liability. *See* Clifford Decl., Ex. 1 at Declarations, Item 4.

7. The Policy's Retroactive Date is December 1, 2001. *See* Clifford Decl., Ex. 1 at Declarations, Item 8.

8.      The Policy's Knowledge Date is September 1, 2019. *See* Clifford Decl., Ex. 1 at Declarations, Item 9.

9.      Under to the Policy's Insuring Agreement, Aspen

shall pay on behalf of the Insured all sums in excess of the Deductible amount identified in the Declarations which the Insured shall become legally obligated to pay as Damages and/or Claims Expenses resulting from Claims first made against the Insured during the Policy Period, or Extended Reporting Period, if applicable. as a result of a Wrongful Act by an Insured or an entity for whom the Insured is legally liable, provided that:

> A.      The Wrongful Act or Interrelated Wrongful Acts were first committed on or after the Retroactive Date and before the end of the Policy Period;
>
> B.      No Insured gave notice to any prior insurer of such Wrongful Act or Interrelated Wrongful Acts;
>
> C.      The Insured has reported such claim in writing to the Insurer, as soon as practicable during the Policy Period, but in no event later than sixty (60) days after expiration or termination of this Policy, or during the Extended Reporting Period, if applicable; and
>
> D.      Prior to any Knowledge Date identified in the Declarations of this Policy, no Insured knew or could have reasonably foreseen that such Wrongful Act or Interrelated Wrongful Acts might give rise to a Claim.

*See* Clifford Decl., Ex. 1 at Insuring Agreements.

10.     The Policy defines Claim as "a written demand for Damages or injunctive relief received by an Insured alleging a Wrongful Act, including a complaint, arbitration proceeding, or civil lawsuit." *See* Clifford Decl., Ex. 1 at Definition B, Claim.

11.     Under the Policy, "Damages are defied as follows:

Damages means any monetary judgment or settlement negotiated with the prior approval of the Insurer, and shall also include punitive or exemplary damages or the multiple portion of any multiplied damages award unless such damages are uninsurable pursuant to applicable law. The insurability of such Damages shall be governed by the internal laws of any applicable jurisdiction which permits

coverage of such Damages.  However, Damages shall not mean any disgorgement, return, withdrawal, restitution or reduction of any sums which are or were in the possession or control of any Insured, or any amounts credited to any Insured's account; fines, sanctions, taxes, penalties or awards deemed uninsurable pursuant to any applicable law.

*See* Clifford Decl., Ex. 1 at Definition D, Damages.

13. Under the Policy, "Claims Expenses" is defined as follows:

Claims Expenses means reasonable and necessary fees, costs and expenses incurred by the Insurer, or by the Insured with the prior written consent of the Insurer, consisting of fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, including the cost of appeal bonds; however, the Insurer shall not be obligated to apply for or furnish appeal bonds. Claims Expenses do not include salary charges, wages or expenses of partners, principals, officers, directors, members or employees of the Insured or the Insurer."

*See* Clifford Decl., Ex. 1 at Definition C, Claims Expenses.

13. The Policy states that a "Wrongful Act" is "any actual or alleged negligent act, error or omission, including Personal Injury, solely while performing Professional Services." *See* Clifford Decl., Ex. 1 at Definition T, Wrongful Act.

14. In the event of a Claim, the Policy provides the following steps: "1. Immediately forward to the Insurer every demand, notice, summons and/or pleading received by an Insured; [and] 2. Give written notice, as soon as practicable, but in no event later than sixty (60) days after expiration or termination of this Policy, or Extended Reporting Period, if applicable, containing particulars sufficient to identify the Insured and claimant, and complete and comprehensive information regarding the facts and circumstances surrounding the Wrongful Act[.]"  *See,* Clifford Decl., Ex. 1 at Claims: Notice of Claims and Potential Claims.

15. Aspen "has the sole right to appoint defense counsel and the right and duty to defend any Claim made against an Insured." *See,* Clifford Decl., Ex. 1 at Claims: Defense, Investigation, Consent to Settle.

4

16. Under the Policy, should a dispute arise, Aspen and Stout "shall participate in a non-binding mediation", after which "[e]ither the Insurer or the Insured may commence a judicial proceeding or binding arbitration proceeding after ninety (90) days has passed from the termination of the mediation." *See,* Clifford Decl., Ex. 1 at General Condition L, Dispute Resolution Process.

## II. The Underlying Action

17. On or about June 22, 2020, Wilmington Trust, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company ("Wilmington"), filed a complaint against Stout captioned <u>Wilmington Trust, N.A. v. Stout Risius Ross, LLC</u>, Case No. 20-cv-02505-LLS-KHP (S.D.N.Y.) (the "Wilmington Action"). *See* Copy of the Complaint in the Wilmington Action (the "Wilmington Complaint"), Healy Decl. Ex. 1.

18. Wilmington engaged Stout to perform financial-advisory and valuation services related to Constellis Group, Inc.'s ("Constellis") ESOP transaction, for which Wilmington served as trustee. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶¶ 1 – 2.

19. Wilmington alleges that it represented the ESOP as a fiduciary and that it agreed to enter into a transaction whereby the ESOP would buy 90% of outstanding shares from the owners and swap with the owners for the remaining 10% a set of warrants that "allow[ed] them to appoint a majority of Constellis's board of directors" even after the ESOP purchase. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶ 59.

20. The Wilmington Complaint alleges that Wilmington approved the ESOP transaction "in reliance on Stout's analyses and opinions" and that "Wilmington had no reason to question Stout's expertise or reliability." *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶¶ 19, 38.

21. "Many months" after the ESOP transaction finalized, Wilmington was found liable for claims that were asserted against Wilmington regarding the transaction ("Brundle Action"). *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶ 44.

22. Wilmington alleges that, as the ESOP fiduciary, it approved a prohibited transaction under ERISA and, therefore, its only defense in the Brundle Action was that "the ESOP paid no more than fair-market value for Constellis's stock." *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶ 45.

23. Stout was not named, or joined, as a party in the Brundle Action and no allegations were made against Stout in the Brundle Action. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶ 44; Complaint, ECF Doc. No. 1 at ¶¶ 19-21.

24. Wilmington's Complaint alleges that after the claims in the Brundle Action, "Wilmington did not suspect, and had no cause to suspect, that Stout's work was deficient." *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶ 48.

25. Wilmington alleges that it had a long-standing relationship with Stout, having worked with Stout on many prior ESOP transactions and that Stout had "provided valuation and advisory services to every major institutional ESOP trustee in the United States." *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶ 18, 64.

26. Wilmington argued in the Brundle Action that Stout's valuation was appropriate. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶ 49.

27. Wilmington alleges that it worked "side-by-side" with Stout to defend the Brundle Action. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶ 50.

28. Wilmington took the position and publicly argued that all of Stout's valuation services relating to the Constellis ESOP were satisfactory. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶49.

29. On March 13, 2017, the Court entered judgment against Wilmington for breach of its duties as an ERISA fiduciary in the amount of $29,773,250. The United States Court of Appeals for the Fourth Circuit affirmed the judgment against Wilmington on March 22, 2019. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶¶ 85, 86.

30. During and after the Court entered judgment against Wilmington for breach of its fiduciary duties, Wilmington continued to retain Stout's services for separate valuation engagements. *See* Complaint, ECF Doc. No. 1 at ¶ 56.

31. On June 22, 2020, Wilmington filed the operative complaint in this action, with specific allegations against Stout. The complaint did not attach the decision in the Brundle Action. *See* Wilmington Complaint, Healy Decl. Ex. 1.

32. Prior to the filing of the Wilmington Action, Stout had received no demand for damages, money, or other relief from anyone, including Wilmington, in connection with the Constellis ESOP. *See* Complaint, ECF Doc. No. 1 at ¶ 48.

33. Before its Complaint, Wilmington had never alleged that Stout's services were deficient or negligent in any fashion in performing any prior valuation services. *See* Complaint, ECF Doc. No. 1 at ¶ 52.

34. The underlying Wilmington Complaint alleges three causes of action against Stout: breach of contract, negligence, and contribution. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶¶ 89 – 129.

35. The causes of action in the Wilmington Complaint constitute Claims under the Policy. *See* Clifford Decl., Ex. 1 at Definition B, Claim.

36. Wilmington alleges it is entitled to monetary damages on each of the causes of action, including Stout's equitable share of the judgment. *See* Wilmington Complaint, Healy Decl. Ex. 1 at Prayer for Relief.

37. The Wilmington Complaint does not allege that Stout was a fiduciary or has any liability under ERISA. *See* Wilmington Complaint, Healy Decl. Ex. 1.

38. The Wilmington Complaint contains no allegations that Stout knew or should have known at any point prior to the Policy's Knowledge Date that its valuation services could have led to a claim against it. *See* Wilmington Complaint, Healy Decl. Ex. 1; Complaint, ECF Doc. No. 1 at ¶ 50.

39. The Wilmington Complaint alleges that in the course of providing valuation services to Wilmington, in Wilmington's capacity as an ERISA trustee for an ESOP, Stout breached contractual obligations that it owed Wilmington, including failing to use appropriate valuation methodologies in reaching a valuation opinion and failing to perform its services with reasonable care in a professional, diligent, and competent manner. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶¶ 93 – 95.

40. The Wilmington Complaint alleges that Stout negligently breached a standard of care owed to Wilmington. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶¶ 110 – 111; 124 – 125.

41. The Wilmington Complaint further alleges that Stout is liable to Wilmington under a theory of contribution. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶¶ 115-129.

42. Wilmington paid the judgment for which it seeks contribution on August 23, 2019. Wilmington's cause of action for contribution, therefore, did not fully accrue until August 23, 2019, nine (9) days before the Knowledge Date. *See* Wilmington Complaint, Healy Decl. Ex. 1 at ¶ 87.

### III.    Aspen's Denial of Coverage.[1]

43. Stout has complied with all conditions precedent to coverage. *See* Complaint, ECF Doc. No. 1 at ¶ 36.

44. On October 31, 2019, Wilmington sent a draft tolling agreement (the "Tolling Agreement") to Stout, which in part purported to toll "any applicable statutes of limitation governing the filing of any claim or cause of action relating to or arising out of the relationships or transactions or dealings" between Stout and Wilmington. *See* Clifford Decl. at ¶ 2.

45. Prior to the Tolling Agreement, Wilmington never threatened or raised a specter of litigation. *See* Complaint, ECF Doc. No. 1 at ¶ 48.

46. On November 8, 2019, Stout provided a copy of the Tolling Agreement to Aspen. *See* Clifford Decl. at ¶ 3.

47. On November 12, 2019, Wilmington filed a Summons with Notice in New York State Supreme Court that did not contain any specific allegations against Stout. *See* Clifford Decl. at ¶ 4.

48. Stout immediately provided notice to Aspen of its receipt of the Summons with Notice. *See* Clifford Decl. at ¶ 4.

---

[1] The following facts are not part of the underlying action or the Policy but pertain to this coverage action.

9

49. In correspondence dated February 4, 2020, prior to the filing of the Wilmington Complaint, Aspen denied coverage under the Policy, citing the Policy's Knowledge Date as the basis for its denial and raising Stout's responses in its application for coverage as potential grounds for denying coverage. *See* Clifford Decl. at ¶ 6.

50. On May 17, 2021, Stout filed its complaint against Aspen for breach of contract and declaratory judgment arising out of Aspen's failure to honor its obligations under the policy. *See* Complaint, ECF Doc. No. at ¶ 48.

51. Stout and Aspen participated in non-binding mediation, which was held on February 16, 2021, and did not resolve the coverage dispute. Ninety days after the termination of the mediation, Stout commenced this lawsuit. *See* Healy Decl. at ¶ 5.

52. Due to Aspen's denial of coverage, Stout has borne all costs and fees of its own defense to date in the Wilmington Action and will incur substantial additional costs, fees, and expenses going forward. *See* Clifford Decl. at ¶ 7.

53. In addition, Stout has borne all costs, fees, and expenses of attempting to persuade Aspen to honor its coverage obligations, including in the mediation, and in this action. Stout will incur substantial additional costs, fees, and expenses going forward. *See* Clifford Decl. at ¶ 8.

Dated:  September 8, 2021               **ANDERSON KILL, L.L.P.**

                                        By:   */s/ Daniel J. Healy*

        Daniel J. Healy, Esq. (DH-7396)
        dhealy@andersonkill.com
        **ANDERSON KILL, L.L.P.**
        1717 Pennsylvania Avenue, N.W.
        Suite 200
        Washington, DC  20006
        Telephone:  202-416-6500

        John M. Leonard, Esq. (JL-2015)
        jleonard@andersonkill.com
        **ANDERSON KILL, P.C.**
        1251 Avenue of the Americas
        New York, NY  10020
        Telephone:  212-278-1000

        *Attorneys for Plaintiff*
        *Stout Risius Ross, LLC*