UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STOUT RISIUS ROSS, LLC,

                       Plaintiff,

    – against –

ASPEN SPECIALTY INSURANCE
COMPANY,

                    Defendant.

**<u>OPINION & ORDER</u>**

21 Civ. 4412 (ER)

<u>Ramos, D.J.</u>:

Stout Risius Ross, LLC ("Stout") brings this action alleging breach of contract and seeking a declaratory judgment that Aspen Specialty Insurance Company ("Aspen"), is obligated to defend and indemnify it in a separate action brought by Stout's former client, the Wilmington Trust Retirement and Institutional Services Company ("Wilmington"). Doc. 1. Pending before the Court are Aspen's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Stout's cross-motion for partial summary judgment pursuant to Rule 56 of the Federal Rules. Docs. 24, 27. For the reasons set forth below, Aspen's motion to dismiss is GRANTED and Stout's cross-motion for partial summary judgment is DENIED.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are based on the allegations in Stout's complaint, which the Court accepts as true for purposes of Aspen's motion to dismiss. *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). In addition, citations to Stout's 56.1 Statement, Doc. 31, and Aspen's 56.1 Response Statement, Doc. 35, are included where the facts are undisputed for purposes of Stout's motion for partial summary judgment.

    **A. The Brundle Action**

In October 2013, Wilmington, as trustee of an Employee Stock Ownership Plan ("ESOP") for Constellis Group, Inc. ("Constellis"), engaged Stout to provide valuation

and financial advisory services related to an ESOP transaction.  Docs. 1 ¶ 17; 31 ¶ 18.
Tim P. Brundle, acting on behalf of the Constellis ESOP, then sued Wilmington in 2015
in the Eastern District of Virginia, alleging violations of the Employee Retirement
Income Security Act of 1974 ("ERISA") in connection with the transaction, *Brundle on
behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr. N.A.*, Case No. 15 Civ.
1494 (the "Brundle Action").  Docs. 1 ¶¶ 18, 24; 31 ¶ 21.  Stout was not a party to the
Brundle Action.  Docs. 1 ¶¶ 19–21; 31 ¶ 23.

In the Brundle Action, the plaintiff alleged that the $4,235.00 per share price paid
by the ESOP for Constellis stock was not the fair market value and resulted in the ESOP
overpaying for stock.  After a bench trial, the district court held on March 13, 2017, that
Wilmington had engaged in a prohibited transaction in violation of its fiduciary duties to
the ESOP and entered an award of approximately $29.8 million in damages against
Wilmington.  Docs. 1 ¶ 25; 31 ¶ 29.  Aziz El-Tahch, one of the Stout analysts who
completed the Constellis valuation, testified at trial.  Doc. 26-1 at 5, 13–14, 20; *see also
Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr. N.A.*, 241
F. Supp. 3d 610, 631, 635  (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019), *as
amended* (Mar. 22, 2019), and *aff'd*, 919 F.3d 763 (4th Cir. 2019), *as amended* (Mar. 22,
2019) ("*Brundle I*").  The district court's opinion specifically found that "Wilmington
rushed its evaluation of the Constellis ESOP . . . and failed to adequately vet [Stout's]
conclusions,"  and that "Wilmington has not demonstrated that its reliance on [Stout's]
report was 'reasonably justified' . . . because it has not shown that it thoroughly probed
the gaps and internal inconsistencies in the report."  Doc. 26-1 at 7, 16; *Brundle I*, 241 F.
Supp. 3d at 621, 634.

The Fourth Circuit Court of Appeals affirmed the district court's judgment against
Wilmington in March 2019, including its findings that "Wilmington's reliance on the
[Stout] report" was "inadequate in four major respects."  Docs. 1 ¶ 26; 31 ¶ 29; 26-2 at 6–
9; *see also Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr.,*

*N.A.,* 919 F.3d 763, 774–78 (4th Cir. 2019), *as amended* (Mar. 22, 2019) ("*Brundle II*"). Specifically, the Fourth Circuit found that Wilmington (1) failed to investigate Stout's omission from its report of an earlier valuation report, which had estimated a much lower per share value of Constellis stock; (2) failed to "adequately probe the reliability of financial projections prepared by Constellis management and used by [Stout]"; (3) failed to investigate the appropriateness of Stout's conclusion that a control premium applied to the stock; and (4) "fail[ed] to probe why [Stout] consistently rounded the valuation of Constellis stock upwards," increasing the price the ESOP would pay for the stock.  Doc. 26-2 at 6–9, *Brundle II*, 919 F.3d at 774–78; *see also* Doc. 26-1 at 16–20, *Brundle I*, 241 F. Supp. 3d at 634–40 (describing the "four major failures" in Wilmington's reliance on the Stout valuation report).

During the Brundle Action and after the judgment against Wilmington had been affirmed, Wilmington continued to engage Stout for other valuation services.  Docs. 1 ¶¶ 55–56; 31 ¶ 30.  By August 23, 2019, Wilmington had fully satisfied the judgment entered against it.  Doc. 31 ¶ 42.

**B.  The Policy**

On September 25, 2019—years after the Brundle Action was filed and approximately six months after the Fourth Circuit affirmed the district court's judgment against Wilmington—Stout and Aspen executed Aspen Miscellaneous Professional Liability Insurance Policy No. LR00DPQ19 (the "Policy").  Doc. 1-1.[1]  The Policy covered the period from September 1, 2019, to September 30, 2020.  *Id.* at 3–4; Doc. 31 ¶¶ 3–5.  The Policy provides liability coverage related to Stout's professional services, among them valuation services, including for ESOPs; litigation consulting and services; real estate and property appraisals; expert witness services; and contains a five million dollar per claim limit of liability.  Doc. 1-1 at 3–4.

---

[1] A copy of the Policy is also included as an exhibit in support of Stout's motion for partial summary judgment, Doc. 30-1.  When citing to the Policy, the Court will refer to Doc. 1-1.

The Policy provides that coverage is subject to a prior knowledge condition: "Prior to any **Knowledge Date** identified in the Declarations of this Policy, no **Insured** knew or could have reasonably foreseen that such **Wrongful Act** or **Interrelated Wrongful Acts** might give rise to a **Claim**." *Id.* at 6. The Policy also includes definitions of certain words and phrases. *Id.* at 8–10. The Knowledge Date is September 1, 2019. *Id.* at 4. "Insured" means Stout and certain other covered entities not relevant to the instant motions. *Id.* at 9. "Wrongful Act" is defined as "any actual or alleged negligent act, error or omission . . . while performing Professional Services." *Id.* at 10. "Claim" means "a written demand for Damages or injunctive relief received by an Insured alleging a Wrongful Act, including a complaint, arbitration proceeding, or civil lawsuit." *Id.* at 8.

### C.  Wilmington Sues Stout

On approximately October 31, 2019, Wilmington sent Stout a draft tolling agreement purporting to toll any applicable statutes of limitation governing any cause of action relating to or arising out of the transactions between Wilmington and Stout.[2] Docs. 1 ¶ 37; 31 ¶ 44. Stout provided a copy of the tolling agreement to Aspen on November 8, 2019. Docs. 1 ¶ 38; 31 ¶ 46.

On November 12, 2019, Wilmington filed a summons with notice in the Supreme Court of the State of New York, County of New York against Stout, and sent a draft, unfiled complaint to Stout (the "Wilmington Action"), which Stout in turn gave notice of to Aspen. Docs. 1 ¶¶ 39–40; 31 ¶¶ 47–48.

Stout removed the Wilmington Action to this District on March 23, 2020, and the matter was assigned to Judge Stanton. Doc. 1 ¶ 42; *see also Wilmington Trust, N.A. v. Stout Risius Ross, Inc.*, No. 20 Civ. 2505 (LLS). Wilmington filed its complaint on June 22, 2020, bringing claims for breach of contract, negligence, and contribution against

---

[2] Aspen disputes this statement of fact, as the facts are within Stout's custody and control and Aspen has not yet had the opportunity to take discovery. Doc. 35 ¶ 44.

Stout.  Doc. 1 ¶ 43.  Wilmington's complaint alleges that Stout failed to adhere to reasonable professional standards and did not provide a proper valuation of the Constellis ESOP and seeks contribution by Stout for the judgment entered against Wilmington. Docs. 1 ¶¶ 44–48; 1-2.[3]

Stout moved to dismiss the Wilmington Action, and on March 23, 2021, Judge Stanton granted the motion in part and denied it in part.  *See* No. 20 Civ. 2505, Doc. 35; *see also Wilmington Tr., N.A. v. Stout Risius Ross, Inc.*, No. 20 Civ. 2505 (LLS), 2021 WL 1110040 (S.D.N.Y. Mar. 23, 2021).  Specifically, the court granted Stout's motion to dismiss Wilmington's breach of contract and negligence claims and denied it as to Wilmington's claim for contribution.  *Wilmington*, 2021 WL 1110040, at *1.

Meanwhile, Aspen wrote to Stout on February 4, 2020, denying coverage under the Policy for the Wilmington Action and citing the Knowledge Date as the basis for denial.  Docs. 1 ¶ 41; 31 ¶ 49.  That denial gave rise to the instant suit.

### D.  Procedural History

Stout brought this action on May 17, 2021, seeking a ruling that Aspen must defend and indemnify it in the Wilmington Action.  Docs. 1, 1-2.  Aspen moved to dismiss the complaint on August 18, 2021.  Doc. 24.  Stout cross-moved for partial summary judgment on September 8, 2021.  Doc. 27.

## II.   LEGAL STANDARD

### A.  Dismissal Under Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Christie's Int'l, PLC*, 699 F.3d at 145.  However, the Court is not required to credit "mere

---

[3] Stout attached Wilmington's June 22, 2020, complaint against it as an exhibit to its own complaint.

conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### B. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y.

2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjectures or surmises.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Rather, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68.

## III.   DISCUSSION

The parties agree that New York law applies.  Docs. 25 at 12, 28 at 10.  Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (internal quotation marks and citations omitted).  "When the provisions are unambiguous and understandable, courts are to enforce them as written."  *Id.* (citation omitted).  "Whether a contract is ambiguous . . . is a 'threshold question of law to be determined by the court.'"  *Id.* (quoting *Duane Reade Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005)); *see also Int'l Multifoods Corp. v. Com. Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir. 2002).  With these principles in mind, the Court will first consider Aspen's motion to dismiss before turning to Stout's motion for partial summary judgment.

### A.  Aspen's Motion to Dismiss

*1. The* Brundle *Opinions*

Stout claims that the Court may not consider the district court's and the Fourth Circuit's opinions in *Brundle I* and *Brundle II* because they are "improper extrinsic documents," which Aspen may not rely on at the motion to dismiss stage and of which the

Court may not take judicial notice. Doc. 28 at 14, 19–21. That argument fails for several reasons. First, the Court agrees with Aspen that the *Brundle* opinions are incorporated by reference in Stout's complaint, Doc. 1 ¶¶ 25–26, and are therefore properly considered on a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as documents that are "integral to the complaint.") (internal quotation marks and citations omitted). Second, the Court may take judicial notice of the *Brundle* opinions without taking the contents of those opinions for their truth. *See Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425–26 (2d Cir. 2008); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998) (courts may take judicial notice of other courts' opinions, but may not rely on facts adjudicated in the prior case); *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.,* 449 F. Supp. 3d 354, 372 (S.D.N.Y. 2020) (taking judicial notice of a state court opinion to determine whether the insurer had a duty to defend).

In sum, the Court agrees with Aspen, Doc. 34 at 8, that it may consider the *Brundle I* and *Brundle II* opinions not for the truth of the assertion that Stout's valuation of the Constellis ESOP was deficient, but rather for their existence and for the fact that Stout's former client Wilmington was subject to a $29.8 million judgment at the end of the Brundle Action.[4]

---

[4] Because the Court finds that the *Brundle* opinions are not extrinsic evidence and are properly considered on the motion to dismiss, the Court does not consider Aspen's argument in the alternative that extrinsic facts may be properly considered where those facts are unrelated to the underlying action and establish that coverage is unavailable. Doc. 34 at 9–10.

2.  *Prior Knowledge Condition*[5]

Aspen argues that the facts as alleged in Stout's complaint establish that it cannot satisfy the Policy's prior knowledge condition, "because any reasonable professional with knowledge of the outcome of the Brundle Action, which occurred prior to September 1, 2019, would have understood that a Claim might be asserted against Stout."  Doc. 25 at 12.  Stout responds that its well pleaded allegations establish a possibility that the Wilmington Action against Stout falls under the Policy's coverage under the applicable subjective-objective test, and "[t]he mere notion that a party could be sued does not meet Aspen's high bar of proving that the Knowledge Date exclusion applies."  Doc. 28 at 14–18.

Neither party argues that the Policy's prior knowledge condition is ambiguous, and the Court agrees that the language is not ambiguous, particularly since the Policy defines key terms.  "[U]nder New York law, if an insurance policy is unambiguous, a court applies its plain terms."  *Quanta Lines Ins. Co. v. Invs. Cap. Corp.*, No. 06 Civ. 4624 (PKL), 2009 WL 4884096, at *16 (S.D.N.Y. Dec. 17, 2009), *aff'd sub nom. Quanta Specialty Lines Ins. Co. v. Invs. Cap. Corp.,* 403 F. App'x 530 (2d Cir. 2010) (citing *Int'l Multifoods Corp.,* 309 F.3d. at 83).

Furthermore, the parties agree that the two-pronged subjective-objective test articulated by the Appellate Division, First Department in *Liberty Ins. Underwriters Inc. v.*

---

[5] The parties dispute whether the prior knowledge condition is an exclusion, and therefore which party bears the burden to establish that coverage does or does not apply.  Stout contends that the prior knowledge condition is an exclusion since it has an exclusionary effect, and therefore Aspen bears the burden, citing *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1205 (2d Cir. 1995), *opinion modified on denial of reh'g,* 85 F.3d 49 (2d Cir. 1996) ("[U]nder New York law, the exclusionary effect of policy language, not its placement, controls allocation of the burden of proof.").  Doc. 28 at 10–11.  Aspen responds that the New York Court of Appeals has rejected *Stonewall* and has held that the insured bears the burden of proving compliance with policy conditions, citing *Consol. Edison Co. of New York v. Allstate Ins. Co.,* 98 N.Y.2d 208, 219–20, 774 N.E.2d 687, 691–92 (N.Y. 2002) ("In our view, the contention that the requirement of an 'accident' or 'occurrence' itself operates as an exclusion is unpersuasive.  *Any* language providing coverage for certain events of necessity implicitly excludes other events. [. . .]  The insured has the initial burden of proving that the damage was the result of an 'accident' or 'occurrence' to establish coverage[.]").  Doc. 34 at 5–6.  The Court agrees with Aspen that it is not necessary to resolve this dispute, because the prior knowledge condition bars coverage regardless of which party bears the burden.

*Corpina Piergrossi Overzat & Klar LLP* applies to the determination of whether the prior knowledge condition bars coverage of Stout's defense in the Wilmington Action.  78 A.D.3d 602 (1st Dep't 2010).  Under this test, courts "must first . . . consider the subjective knowledge of the insured and then the objective understanding of a reasonable [professional] with that knowledge."  *Id.* at 604 (internal quotation marks and citation omitted).  Specifically, "the first prong requires the insurer to show the insured's knowledge of the relevant facts prior to the policy's effective date, and the second requires the insurer to show that a reasonable [professional] might expect such facts to be the basis of a claim."  *Id.* at 604–05 (internal quotation marks and citations omitted); *see also B Five Studio LLP v. Great Am. Ins. Co.*, 414 F. Supp. 3d 337, 340–41 (E.D.N.Y. 2019) (applying the subjective-objective standard and determining that because the insured had prior knowledge of the factual basis for the claim against it, the prior knowledge provision of the parties' insurance policy applied); *Schlather, Stumbar, Parks & Salk, LLP v. One Beacon Ins. Co.*, No. 10 Civ. 0167 (NPM) (DEP), 2011 WL 6756971, at *7–10 (N.D.N.Y. Dec. 22, 2011) (applying the subjective-objective test and determining that the known claims exclusion applied, since the insured law firm had knowledge a client might have a grievance before the insurance policy was executed, and a reasonable attorney would know that failure to comply with the rules of professional conduct might give rise to a malpractice claim against the firm).

Under this test, Aspen has shown that Stout had both subjective and objective knowledge before the September 1, 2019, Knowledge Date that the $29.8 million judgment entered against Wilmington *might* give rise to a claim by Wilmington against Stout, which is all that is required under the unambiguous language of the Policy.

First, Stout does not dispute that it was aware of the Brundle Action before the Knowledge Date, and in fact the district court's opinion specifically noted that El-Tahch, one of the Stout analysts who prepared the valuation report, testified in the Brundle Action.  *See* Doc. 26-1 at 13–14; *Brundle I*, 241 F. Supp. 3d at 631.  Stout is clear in its

10

moving papers that "[it] knew of the Brundle Action and decisions" and was involved with Wilmington's defense of the Brundle Action, but claims it had no expectation that Wilmington would assert a claim against it until it received the tolling agreement from Wilmington.  Doc. 28 at 14–15.  Accordingly, the subjective prong is satisfied.

Second, the Court agrees that a reasonable professional could expect that the judgment entered against Wilmington, where both the district court and Fourth Circuit faulted Wilmington's reliance on Stout's valuation report, might lead to a claim for contribution against Stout.  *See Westport Ins. Corp. v. Goldberger & Dubin, P.C.,* 255 F. App'x 593, 594 (2d Cir. 2007) (summary order).  In *Westport,* the Second Circuit affirmed the district court's grant of summary judgment to the insurance company.  The Second Circuit found that "[u]nder any reasonable interpretation of the policy"—which provided that the insurer was not required to cover malpractice claims where the law firm could have reasonably foreseen that an attorney's negligent actions "might be expected to the basis of a claim or suit,"—"even a low probability of suit would trigger" the exclusion, even if the client had specifically stated she did not want to bring suit against the law firm.  *Id.* at 594–95.  Stout argues in response that Wilmington had never before claimed its services were deficient, that Stout and Wilmington had a longstanding professional relationship, and that Wilmington had never before threatened litigation and had indeed "affirmatively tak[en] the position that all of Stout's valuation services relating to the Constellis ESOP were satisfactory."  Doc. 28 at 15–16.  Stout relies on *United Nat. Ins. Co. v. Granoff, Walker & Forlenza, P.C.*, 598 F. Supp. 2d 540, 548 (S.D.N.Y. 2009) for the proposition that its continued relationship with Wilmington and the absence of threats of litigation mean that it could not have reasonably foreseen that Wilmington might bring a claim.  Doc. 28 at 16–17.  That case, however, is clearly distinguishable, not least because the client who later sued the law firm, giving rise to the law firm's insurance claim, had negotiated the real estate contract at issue without involving his attorneys.  The court therefore concluded that "[a] reasonable jury could only find . . . that the contract was

cancelled because of [the client's] actions . . . , and not because of anything that [the in-sured law firm] did or failed to do." *Granoff*, 598 F. Supp. 2d at 548.  Here, both the *Brundle I* and *Brundle II* opinions specifically point to flaws in Stout's valuation report in explaining why Wilmington's acceptance of that report without more constituted a breach of fiduciary duty under ERISA.  Without considering whether those decisions were cor-rect on the merits of Stout's valuation report, the outcome of the Brundle Action sufficed to put Stout on notice that its former client might bring a case for contribution against it. *See Citak & Citak v. St. Paul Travelers Cos., Inc.,* No. 07 Civ. 5459 (WHP), 2008 WL 1882660, at *3 (S.D.N.Y. Apr. 28, 2008) ("Where an attorney's errors have resulted in dismissal of his client's claim, the attorney is on notice of a potential claim.") (citations omitted).

Stout makes several other arguments in support of its contention that the Wil-mington Action was not foreseeable before the Knowledge Date:  that it was not a party to the Brundle Action; that Wilmington could have pursued further appeal of the Fourth Circuit's decision to the Supreme Court; that Wilmington did not satisfy the judgment until August 2019 and therefore its contribution claim did not accrue until then; and that Wilmington was found liable for breach of fiduciary duty under ERISA, which requires a high duty that does not apply to Stout's liability.  Doc. 28 at 16–18, 22–23.  The Court agrees with Aspen that all of these arguments are unavailing or irrelevant, Docs. 25 at 18–20, 34 at 18–20, since the merits of the Wilmington Action or the date its claim for contribution accrued are not at issue, only whether it was subjectively and objectively foreseeable that Wilmington might bring a claim.  *See Exec. Risk Indem. Inc. v. Pepper Hamilton LLP*, 13 N.Y.3d 313, 323, 919 N.E.2d 172, 176 (N.Y. 2009) (construing Penn-sylvania law and finding that "the prior knowledge exclusion in this case does not require the known-of act, error, omission or circumstance to be wrongful conduct on the part of the insured.") (internal quotation marks and citation omitted); *Cohen-Esrey Real Est. Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1305 (10th Cir. 2011).

Under the plain terms of the Policy, Stout could have reasonably foreseen before September 1, 2019, that its valuation of the Constellis ESOP for Wilmington might give rise to a claim by Wilmington.  Accordingly, based on the clear and unambiguous language of the Policy, Stout has failed to state a claim, and Aspen's motion to dismiss is granted.

### B.  Stout's Motion for Partial Summary Judgment

Stout moves for partial summary judgment on the issue of Aspen's duty to defend. Doc. 27.  Stout argues that under New York law, the duty to defend is broad, and "[a]n insurer seeking to avoid its duty to defend bears a heavy burden, which, in practice, is rarely met."  *Great Am. Ins. Co.*, 449 F. Supp. 3d at 365 (internal quotation marks and citation omitted).  Stout cites *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335 (S.D.N.Y. 2003) for the proposition that it bears only a low burden to demonstrate that there is a possibility of coverage triggering the duty to defend in order to prevail at summary judgment.  Doc. 27 at 9.  In *Napoli*, the court held that, "[t]o be relieved of its duty to defend, the insurer must demonstrate that each and every claim asserted against the insured is unambiguously not covered or unambiguously excluded from coverage," because "[i]f one claim against [the insured] potentially falls within the [p]olicy's coverage, [the insurer] has a duty to defend the entire action."  295 F. Supp. 2d at 341 (internal quotation marks and citations omitted).

However, for the reasons stated above, the prior knowledge condition applies, and the Wilmington Action is not within the ambit of the Policy's coverage.  The broad duty to defend does not enter the equation, and Stout's motion for partial summary judgment therefore necessarily fails.

### C.  Leave to Amend

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at

least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  In *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, the Second Circuit reaffirmed the "liberal spirit" of Rule 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.  797 F.3d 160, at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam)).

Here, as discussed above, any further amendment would be futile because, under the plain language of the Policy, Stout's claim for defense and indemnification is barred by the prior knowledge condition.  In any event, Stout did not request leave to amend should Aspen's motion to dismiss be granted.  Therefore, Stout will not be permitted leave to amend, and dismissal is with prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Aspen's motion to dismiss is GRANTED.  Stout's cross-motion for partial summary judgment is DENIED.  The Clerk of Court is respectfully directed to terminate the motions, Docs. 24 and 27, and to close the case.

It is SO ORDERED.

Dated:   March 18, 2022
          New York, New York

_____
                    Edgardo Ramos, U.S.D.J.